Good morning, Your Honor. If it pleases the Court, Lawrence Murray on behalf of the appellants in this matter. I have – we've sent out a lot of briefs and laid out the facts as best we know. A couple of points I think bear repeating, and for that purpose, I'd like to save about half my time. I intend to go four or five minutes and then respond, given the chance. Well, if you're going to talk about the facts for four or five minutes, I don't want to listen to it. Sorry, Judge. If you're planning to talk about the facts for four or five minutes, I don't care to listen to it. I think maybe you should talk about something else. We've read the facts. Okay. All right. A couple of – just a couple of points that I want to raise. First, one of the things that occurred in the trial court was we went before Judge Patel, and she gave a set of rulings that said basically the Communication Decency Act, CDA, is not a defense here, et cetera. I'm sorry, not a defense? Not a defense here. And we point that out in our brief. When we come up on the second – on the motion to dismiss the third amended complaint, at that point, there's a whole new set of questions raised by that judge. How come we only have, you know, three plaintiffs here? How come, you know, there's nothing here that demonstrates the volume that you're claiming, Mr. Murray, and I'm having problems with that? And I said, okay, give me a chance to amend the complaint. I can get hundreds of names and hundreds of instances and hundreds of episodes, and the answer was, no, you've had two opportunities. Judge Patel, in her order, did not say I want to see a lot more. The first complaint had deficiencies, which we corrected in the second, and with Judge Patel's order, we thought we had cleared up all of the deficiencies she saw. So going on to a third, it was like that was – that was like an issue that came out of nowhere. So for the purpose of this, of course, this is a – this was a review of a motion to dismiss, and it's de novo. So I wanted to make sure I made that point to the Court. Second, I likened the 230 immunity, if you want to call it, to protection of a phone company. A phone company is a straight pass-through. Information comes in, it goes out. Information comes back, it goes out. They publish, just like Yelp does, they publish advertising. But nobody is penalized because they don't advertise. Nobody has good reviews stripped out and bad reviews pushed to the top, all of which we plead in detail in the complaint. What's important about that is, in the big picture, Yelp is not acting as just a provider. They're not acting as a telephone company pushing information from one side of their – their system to the other. What they're doing is they're coming along and they're rating. They're giving companies a five-star, four-star, three-star. And here's why that's important. Because when you or I open the book up or open the Internet up and we look and we're looking for a plumber, are we going to go to the one with one star? Of course not. But that one star is the statement of Yelp. That's not the statement of the people there. If they – if all Yelp did was take information in and put it out, it's one – that's one thing. But when they rate businesses themselves, they drive traffic. If they don't rate them themselves, they just add up what they've got. No. No, that's not true. What they do is they take, as we write in here in our – in our brief and have in the complaint repeatedly, a business may have five stars, may have ten five-star ratings. In fact, one of them, John Mercurio from San Jose, had ten – 11 five-star ratings. He refused to participate with Yelp. He refused to advertise. Ten of those five-star ratings within two days were gone. That's a different issue. I mean, I thought you were just talking about the sort of aggregated star. I mean, the aggregated star is an aggregation of whatever is showing up on the website. You may be complaining about what's showing up on the website, but that's a different issue. Oh, I think we're on the same page. I agree that the aggregation is a mathematical calculation. The real issue in that is what does Yelp leave up? If you don't advertise, if you don't pay money, they strip away those good reviews and suddenly you're without – That's all the – I mean, one of the problems for me about this case is what comes first, the chicken or the egg, in the following sense. Do we decide the immunity question under Section 230 first based on the broadest view of your allegations and then look at whether you've stated a cause of action? Or do we do it in the other direction? If we did it in the other – because it could be that our ultimate conclusion is that these allegations are just insufficiently plausible as to whether your bottom line about what's happening is actually happening. On the other hand, if we thought your – what you say is happening, i.e., what you ask us to infer from the complaint, which – and it's an inference, not a set of facts, which is that the – this manipulation of what's, you know, being put on the page, we might have a different answer as to the 230 result. If I might, I just want to step one step back. In your roommate's decision, you made it clear that those who just push information through, the phone company, have immunity. Those who add content, change content, or affect the content, and we cite that on page 2. But their position is that that's what they're doing with the – with a couple of add-ons. So one way to look at this case is, well, if we take their version, i.e., we are – we have an algorithm which sorts out what appears on the page in some objective fashion in a non-hands-on way, and then we add things up, so our star system is just an adding up. And the – and so all we're really doing is pushing through, acting as a pass-through for reviews. That's one thing. And then the other is if we take your allegations as you ask us to infer the bottom line, as opposed to just the facts that you infer, that you allege. Okay. I understand your point of view. My suggestion is this is a pleading stage. We have not even gotten into their algorithms. I would love to be able to look at their algorithms and see why within two days of somebody saying, I don't want to buy your product, their good reviews are stripped out. Not once, twice. We have four times here, and we've had hundreds of phone calls of that occurring. If – you know, when we did the Second Amendment complaint, they said, give us more facts. We got date, time specifics in the Third Amendment complaint. This is not just a guesswork. Well, I felt like these are time-sensitive. Within two days for most of them, one of them was within five days. One of them was 10 out of 11. So, in some instances, they were before and after. Some of them were before and after. In some instances, before – there were – there were strips before and there were strips after. Okay. Your Honor, I'm really sorry. I'm straining to hear you. Yeah. All right. Go ahead. Well, let me ask the same question. Isn't it true that the number of negative and positive reviews fluctuated regardless of the businesses advertising with you? Constantly fluctuating. Constantly changing. Yes. But – And the district court said you hadn't shown causation other than these few isolated coincidences of close – close in time, right? And so when I asked for the opportunity to show more coincidences, if he wants 100, if he wants 1,000, we've had our office bombarded with phone calls about this. And I say, well, look, we're only taking the extortion kind of this case. And they say, yeah, we got it. So when I asked the district court standing up there, can I get a chance to amend the complaint to put that information in there? Maybe four is not enough. Would 40? Would four? But he determined that immunity knocked you out. He determined. Now, interesting. Judge Patel said no. These claims are – these claims are – well, look. He wasn't bound by what Judge Patel said. I agree. I agree. He wasn't bound. I agree. That's true. Yeah. But in the – He determined that immunity applied. And then he – my understanding is he really didn't get into the merits of your extortion. And – And that's why we're here. Well, but what I hear you saying is we really don't know how this filtering system worked. And the question I have is, is that good enough under Iqbal and Twombly? Or are we conducting discovery in search of a lawsuit here? No. What we have is instance after instance. Take Tracy Chan, for instance. She had five good reviews up. She has three or four of them stripped. She goes from a five-star down to a three-star. She pays money. Dr. Chan, a dentist on Union Street in San Francisco, pays money. All of those good reviews come back, and the bad ones get stripped. She goes one year, until October of that year, when her – her – runs out. They ask for money again. She says no. All of a sudden, they all get ripped out. Coincidence? Circumstantial evidence. We have – we allege it as circumstantial. If you want more circumstantial evidence, we can – we can't – we have it available. Yes. How may – If we – if we decide that the district court made an error in its immunity determination, do we send it back to him, or do we go on and decide whether or not this Third Amendment complaint states a claim for extortion or unfair competition under California's statute? I think you send it back to the district court. But why do we even need to reach the CDA claim if we decide that you don't make it under ICBAL and Tuamot? Well, if – if you make that – if you make that inference or that statement, then we're done. I mean, it's over. You've had two opportunities, right, to amend your complaint. But, Judge – but, Judge, if one judge says, I want to see certain specifics done in the Third Amendment complaint, and you do it, and then the next judge says, I'm not worried about that. I want to see something different. Well, I thought there was some hint by Judge Chen during the – during the argument that he thought that there was a claim. That's what I thought I heard him say. Yeah. I thought – I mean, I walked out of there thinking we were going to do okay. But – But tell me what makes this a merits extortion. Or let me back up a minute. Suppose Yelp had a – a heading on their page as, say, some new claim. And it said, we have advertisers, and we favor our advertisers in the ratings. Would that be extortion? Would there be anything wrong with that? Your Honor, I don't believe that would be extortion. The extortion doesn't come when they are standing there saying, this is how our policy is. Their extortion comes when they come to you and say, if you as a business owner What I'm pointing out is that it seems to me buried in your extortion argument is the notion that Yelp has an obligation to be neutral and not favor their advertisers. And I want to know where does that come from? I want to back up. We're talking about 230, the communication policy. No, I'm not talking about that. I'm talking about the merits of the extortion claim. Okay. Under – what is it? Under the California Code and the other, extortion occurs when you induce fear as a cause for giving money. But people do charge for advertising, and you get something for your advertising. So what I want to know is why is giving somebody something for their advertising, assuming that's what's happening? Extortion. It's not. If you want to advertise, go ahead and advertise. Here's the money I got. Well, suppose what you're giving them is favorable treatment on your web page. And if there's something wrong with that, it's only because it's – it's – the conservers may have an argument. It's – it's okay. They do give. They tell people, if you advertise, we're also going to give you another part to post more information, more advertising. Where we're coming from is not the advertising or the additional advertising. It's that five star at the top that says this business is good. This is what the public says the business is good. This is what other people – So essentially what you're complaining about more than extortion is a kind of misrepresentation. In other words, you're saying that these – this is an objective system, but it isn't. And if it was just that, that there was misrepresentation, we wouldn't be standing here. What I'm saying is they come up to a business owner and they say, you know, we can help you. We can get your good reviews back up and dump your bad reviews if you pay us money. And why is – I mean, given the American capitalist system, what is wrong with that other than lying to people about what you're doing? Just tell them that, then. Tell them this is – this is not our consumers, because this is what they say. Yelp is based upon and they're – So ultimately, your problem is a misrepresentation. And the extortion, demanding money in order to change that five star that Yelp is the only one that creates. Yelp is the one that says they have an algorithm. They take out certain reviews. They add certain reviews back. And you're saying it all isn't true. They're fooling people. No, I'm saying that if they do it, they will add or subtract based upon who puts up the money. They're fooling people. They're fooling people into thinking they're objective when they're not objective. They're being – they're favoring their advertisers. I'm saying that the advertising is based on – is a totally different animal. We're not worried about advertising. We're worried about the statement that Yelp makes in their five star review that our customers, our clients rate this at this level and this level and this level when it's actually Yelp that's doing it and it's not Yelp. So where's the fear in this? You come up to somebody who's got a business who could lose everything if the public stops coming to them. And you say, either you pay me money or, you know, I can't help you, you're going to lose your rating. It happened, Judge. I see you shaking your head, but it happens five times. We have it in here. It happens because people call us all the time and say, this is what happened to me. So when you go to – when you go tonight and you're going to look for something, a great pair of shoes, what's a good pair of shoe store in San Francisco? You look on Yelp. You go to Google. It's a good shoe store in San Francisco. It immediately takes you to Yelp. When you get to Yelp, what do you get? You get somebody that lays out, here, this business has five stars. They don't tell you that it's because they paid money. They say, our customers – Well, Judge, that sounds like – that sounds like a misrepresentation claim, the way you just explained it. And if it's a misrepresentation claim, it is under 17200 – on 17500, which is the first cause of action in our complaint. Where's the public policy here that's been violated to establish a 17200 claim? Because you're – well, first of all, there's a couple of steps before we get to that. But the public policy is making a statement that this is, in fact, true when it's not true, and you're warranting a business as credible and can do the job with a form when they can't. That will help our advertisers by promoting them to the top of the page so that when you run the search on Google, the favorite advertisers show up first on the top of the page. That's – that's not it. Is that a misrepresentation? That's not it. You're giving them five stars, not just pushing them up to the top of the page. If there was no five stars, if there was no four stars, if there was no stars at all, oh, so they made it to the top of the page. Great. You're putting a thumbprint on them saying they are the best, they got five stars. You're the one that's doing it, not because it's true, but because you're getting money under the table. And you're doing it to the harm of people who are running good businesses out there in the public, working hard, who don't want to pay what they consider to be extortion because – I keep coming back to the fact that the key is the under the table. If it was over the table, there wouldn't be a problem. If it was over the table, if they said this is advertising, there wouldn't be a problem. No. If they said this is that we give our advertisers preference in the ratings. You know what? Google does that. And everybody understands it. They put it in a box. It's a misrepresentation problem. Have you alleged a misrepresentation? It's because the five star represents what they say is. Right. What they say is. But if they said it otherwise, it would be fine. It wouldn't be extortion. Because you have to pay money to avoid having your stuff ripped out. That's where the extortion comes in. The payment of money under fear. Done? Yes. Okay. Thank you. Good morning, Your Honors. May it please the Court. I'm Ashley Berenger, appearing on behalf of the Defendant Appelli Yelp in this case. This appeal ultimately poses the question whether a plaintiff can circumvent the protections of Communications Decency Act Section 230 merely by speculating about the reasons behind an online service's protected publication decisions. In this case, Yelp's automated decisions about which reviews created by third parties to publish or not publish on its service. The plain language and express policy of Section 230. Let's take my misrepresentation hypo. Could you sue Yahoo for misrepresentation? If the facts were not Yahoo, I mean Yelp. In other words, would Section 230 insulate a misrepresentation claim with regard to what Yelp is telling the public and the businesses it's doing? No, Your Honor. It's clear that a party's own statement, if there are well-plaid allegations that it is not true, would be vulnerable to a misrepresentation claim. Section 230 doesn't come into play. I would note that the plaintiffs in their first amended complaint brought that theory. They withdrew it in response to it. They dropped it. They had two further chances. They chose not to raise it. So they have had ample opportunity. And if it was really extortion, I mean clearly extortion, i.e., I'm unless you advertise with me, I'm going to chop your legs off. Yes. If it's really extortion, if it's really being done, if the decisions are not being made, if it's really extortion, that wouldn't be a problem. That's correct. Those we don't have that alleged here, but if they have it in Section 230. All right. So that's why I come back to where I started from. It seems to me it's in what direction you take this. I mean, if you take this assuming that it's extortion, i.e., in terms of your motive notion, then it seems to me that this notion that motive doesn't matter can't be right. If it's really extortion, if it's really being done, if the decisions are not pass-throughs but are being made for economic reasons only, I don't see how that would be protected by Section 230. Do you? Well, this Court said in Barnes v. Yahoo! that what matters is not what you call the claim, whether you call it extortion or negligent undertaking or defamation. The issue is, does the theory of liability derive from the publisher's role in their capacity as a publisher of third-party content? Well, if the allegation is that you're actually just running a business and just putting on here the people who pay you and not the people who – and whatever the theory is, would that eliminate – would that come under Section 230? Well, if you're not making a direct threat, if you're not making a misrepresentation, and you have this case where all that's alleged is we infer a threat – I know, but I'm trying to get to the fact that the protection is only for your actions as publisher. If the cause of action, whatever you call it, is essentially an economic cause of action that says you're mischarging us or you're really – if it's we paid you to be on this page and you didn't put us on, I mean, any of those things, you can call it motive, but they're not being covered by 230, right, because you're not being sued qua publisher. Well, that's where I would respectfully disagree, Your Honor. I think Barnes v. Yahoo! says it doesn't matter whether publication is an element of the cause of action. What matters is the essence of what you're claiming that they did, and here the threat, this whole appeal hinges on their claim that the implied threat was the removal of positive reviews from their pages. That is core publication function. For money. For money. Well, in this case, not for money. But they're alleging for money. The claim is to advertise. They're alleging for money. Well, they're actually – to establish a threat, and the theory of their case is they felt that unless they paid money, that would continue to happen. They actually didn't pay money, so in this particular case. I mean, that's why I'm very uncomfortable deciding the exclusion issue, this 230 issue first, because the facts are a moving target here and they matter. I – I – The facts are a moving target and it appears that they matter. You're essentially saying the details matter as to whether 230 applies or not. Well, yes, the essence of what you're charging the defendant with doing and whether or not that is a publication function. Well, the essence of what they're charging you with doing, whether you think the complaint is adequate or not and whether you think it's extortion or not, is putting ads on this page if you pay money but not if you don't pay money. All right? That's what they're charging you with. Now, you say that didn't happen and besides, it's not a cause of action, it's not extortion. You could be right about all that. But if you're wrong about all that, why does Section 230 apply? Well, the essence of – because Section 230c-1, unlike c-2, and ultimately this Court must be guided by the language of the statute, does not have a good faith limitation. It does not contemplate motive. It looks entirely at the role the defendant is playing. Are they a publisher or are they providing the content at issue? And the reason for that is to prevent the inquiry into the motives behind the publisher's publication decisions. If the rule were otherwise, as Judge Chinn found, then every online publisher could potentially be subjected to litigation, asked to answer for and defend the reasons they put that particular user's review on the site, the reasons they didn't remove that other review. That's exactly the result that Congress sought to avoid. But, but – go ahead. Would you agree, then, that if the plaintiffs can prove that these 200 employees were actually paid to write comments that Yelp then put on the website of these businesses, there would not be immunity under 230 for that behavior? Well, the plaintiff would need to show that employees were paid to write reviews about the plaintiffs. The claim that the question is the content that matters. Right. And that was a district court concern. There's no link here. That's right. And can you help me? The only allegations I can find in the Third Amendment complaint are in paragraphs 37 and 38. Did I miss? In terms of the generic allegations that Yelp authored content generally, yes. That's all we got. There is no allegation that any plaintiff – excuse me, that Yelp authored any review about any plaintiff or that Yelp posted a star read about any plaintiff. But if there were, if there were, section 230 wouldn't apply. If that contributed to their claims, that's correct. Then Yelp would be a content provider. There's no way to decide this case without going – doing the – a whole bunch of things first before you can get to the – to the section 230 issue. Well, respectfully, Your Honor, the Ninth Circuit on Bonk and Roommates has emphasized the need to address these issues up front and to apply the Twomball-Iqbal pleading rules to the analysis of the 230 defense, because these are intended – this statute was intended not just to prevent online services from liability at the end of the day, but from having to go through this exercise and prove its motives and get into discovery behind its publishing decisions. Did Judge Chin determine that there was a failure to state a claim of extortion and unfair business practices? Judge Chin did find, as did Judge Patel, that there was no credible allegation of a threat with respect to expressed threats. He dealt with the statements made by Yelp sales representatives on the merits and found that those didn't constitute an extortionate threat. He then turned to the implied threats, which consisted entirely of publication decisions, and dealt with that under Section 230. But this Court, of course, could uphold the judgment on either ground as having been contained in the orders of the district court below, and I think in both grounds are – are – right. You would agree, though, that we wouldn't need to wrestle with the CDA claim if we could resolve it on the pleadings? That's correct. That's correct. I think good policy is to wrestle with the CDA claim. But we'll take – we'll take a look. Oh, you want an advisory opinion on 230. We want to do that if there's a failure to state a claim here. There's no need to wrestle with it. And there is a failure to state a claim here, a fundamental failure. And frankly, the – What was Judge Chin commenting on during the course of the hearing? I thought that he was suggesting that there was a possibility of a claim here. I think he was actually grappling with the same questions that Your Honors have posed, whether if there was a misrepresentation about how Yelp was conducting things, would that give rise to a claim. And that's when we got into a discussion about the fact that that had been alleged and dropped, and I think at that point he felt there had been enough attempts to plead something here. And ultimately, as is evident from the plaintiff's allegations, what they're really upset about is what users are saying about them online. And that's why this is a paradigmatic Section 230 case. These cases are brought against Yelp all the time. The cause of action changes, the complaint's the same. And this is why we have a Section 230. We wouldn't have a Yelp. We wouldn't have a forum for community speech without that kind of protection. I do want to correct one point that Mr. Murray made. He suggested that Judge Patel had rejected the application of CDA 230. Actually, Judge Patel found that CDA 230 did apply to the allegations that Yelp posted negative reviews about the plaintiffs. And as a result, the plaintiffs have limited their appeal solely to, expressly, solely to the question of whether the removal of positive reviews could be an applied threat for purposes of their State law and extortion claims and sufficient to deprive Yelp of CDA 230 immunity. Judge Patel did not reach the question of whether the removal of positive reviews fell outside of CDA 230 immunity. And here, to emphasize the point on the merits, since Your Honors seem to be focused on that equally and appropriately, a threat is a ‑‑ extortion is a criminal act, a criminal act. A question here is would a court be prepared to put these sales reps in jail for saying things like, we work with your reviews if you pay us advertising? And an extortion claim requires ‑‑ What does that mean? Does that mean we work with your reviews, we'll move the positive reviews on your business and your business to the front page of a search? Or is it more sinister than that? Well, it could mean any number of non-sinister things, including there was a policy at one point where Yelp allowed parties that advertised to elevate a favorite review to the top of their page. So that would be the first review that someone would see. But what it doesn't say, essentially and critically, is if you don't advertise, we will harm you. That's a threat. You know, there are legal publications out there. You can pay money to be ‑‑ Well, I mean, that's a kind of nice distinction in a competitive world. I mean, if you would either take off positive reviews or put on ‑‑ for people who advertise, would take off their negative reviews or put on their positive reviews, that's going to harm the people who don't advertise in a competitive world. Well, the courts are clear that an offer of benefits, even if you may suffer, if you don't take advantage of the offer and pay money to receive those benefits, is not a threat. If that were a threat, that could potentially apply to a lot of routine. Even when the benefit is a benefit to make you put somebody else in a worse position vis‑a‑vis you. That's a practical matter. I mean, it seems like an awfully nice distinction. If there was an assertion, if there was ever a claim that Yelp had said, if you don't advertise with us, we will cover your page with negative reviews, or we will take you down, or we will break your legs, or whatever it is. The point is, what's not said is, if you don't advertise with us, bad things will happen. All that's said is, if you do advertise with us, here's the ways that we can help you. And offers of benefits are not extortionate threats under numerous circuit and district court decisions. And there are many, you know, vehicles out there, publishing vehicles. For example, legal publications, where you can pay money to be listed in their list of who's who and the best lawyers in America. And, you know, they work with your reputation if you pay them. And they hold this out as a list of their selected members of the legal profession, and you pay money for that. Someone approaching me to pay money to improve my reputation and be listed in that kind of a publication, that's not a threat. If they said, if you don't, we're going to go out and engage in a smear campaign, that is a threat. And that distinction is critical here. So can you help me with how this algorithm works? As I understand it, it periodically reshuffles the deck somehow so that comments that appeared on the business's web page disappear, but they don't really disappear because they're still counted in the star rating? Is that how it works? So I will say the problem of fake reviews on Yelp is huge. It's a subject of academic inquiry. So they don't reveal the details of the algorithm, but as a general rule. But they have to have a defense to the competitor who writes bad reviews on one of its competitors. Correct. The algorithm is applied to every review. It doesn't know whether or not the business is an advertiser, and it's looking for all kinds of algorithmic signals as to whether or not the reviewer is reliable and whether they may have a connection to the business owner. And it's a very sophisticated, well-respected algorithm. And it operates after the fact. So when you post a review, you have that good feeling of seeing your review go up on the website. It would be a bad experience otherwise. It's filtered out before. It goes on the site before the software does what the software does. Right. When you post a review, it shows up. It would be a terrible experience for legitimate reviewers otherwise. But it then is running all the time on reviews, and when it detects indications of reliability, it's removed. There was something in the record that suggested that there's maybe an earlier filter such that new reviewers don't get on the first or immediately. They have to. I mean, there was a vetting for some kind of track record. Well, without getting into the proprietary details of the filter, the reliability of the reviewer is a key component of the filter, which is why that can change over time. A reviewer can behave differently over time on the site. So a review that might be filtered at one point. But there's no up-front exclusion of brand-new reviewers. Not that I'm aware of. And I don't believe that's alleged. I note that I'm out of time. So unless there are further questions, I appreciate your consideration. Thank you. You get one minute. It's been a long morning. Your Honor, I'd like to direct your attention to the paragraph 64 of the complaint. Kevin from January 5, 2010, Kevin from Yelp Sales calls Cats and Dogs and says, yeah, you got negative reviews. Yelp will hide negative reviews on Cats and Dogs if you subscribe for one year. We'll make sure you don't get any negative reviews that appear on Google, and on and on and on. This is a direct comment from Yelp's salesperson to one of the plaintiffs here. And what about this notion that you can't have an extortion from a benefit? You can't have a ---- They're selling. I mean, in a way, it dovetails with what I was saying earlier. They're selling something, i.e., a better web page. Are they precluded from selling that? No, they're not. They're selling a rating. They rate you. They take these good reviews, throw them away, put up bad reviews, either that they created or somebody else created, and they give you a one-star. You may have the best dog and cat hospital in the world. You may have all these five-star ratings, but they're going to rip them off, throw them away, and let only negative ones appear up there, and then rate you on the negative one. You'll get one star. Where's your business going to go? It's, of course, going to go downhill. Why? Because the public relies on their five-star rating. That's where the crux of this case is. Okay. Thank you. Thank you. Thank you, counsel. We appreciate your arguments. Interesting case. The matter is submitted at this time. That ends our session for today. Submitted.
judges: Paez, Berzon, Tallman